IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:22-CR-00018-FDW-DSC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| DARRELL ALAN HARRIS, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Suppress Evidence and Motion for Franks Hearing," Doc. 29, filed on January 20, 2023. The Government's "Response in Opposition of Defendant's Motion to Suppress," Doc. 31, was filed on January 27, 2023. The Court conducted an evidentiary hearing on February 24, 2023.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the record and following the evidentiary hearing, the undersigned respectfully recommends that Defendant's Motion to Suppress be **DENIED** as discussed below.

**I. FACTUAL BACKGROUND AND FINDINGS**

Defendant is charged in a one-count Bill of Indictment with possession of firearm by felon in violation of 18 U.S.C. § 922(g)(1). During the hearing, the Court heard testimony from Officers Charles Famulari, Jabari Barrett and Joseph Muha of the Charlotte Mecklenburg Police Department. The Court also viewed portions of the videos captured by the officers' body worn cameras during the traffic stop.

On or around March 8, 2021, Officer Famulari initiated a voluntary contact with Defendant Darrell Harris in the vicinity of Catherine Simmons Drive and August Street in Charlotte. Famulari was part of an increased police presence in this high crime area. Defendant was operating a white Dodge Ram truck. A tag reading "TAG APPLIED FOR" was displayed on the truck. Famulari advised Defendant that his tag was improper. During the course of their contact, Defendant gave the officer a fictitious name. Famulari did not document the contact and Defendant was not detained.

On March 15, 2023, Famulari spotted Defendant operating the same truck back in the area of Catherine Simmons Drive. The truck was still displaying the improper tag. The officer was going to initiate a stop for the improper tag. As Famulari approached in his cruiser, Defendant drove away and entered I-77 from La Salle Street. Defendant accelerated and Famulari reached a speed of ninety miles per hour attempting to stop the truck. Defendant pulled onto the shoulder of I-77 near Morehead Street. Famulari approached the passenger side of the truck. An eight year old child in the back seat was the only passenger. The officer detected a strong odor of marijuana coming from inside the truck. He advised Defendant that he was being stopped for the improper tag and for driving "way too fast." Defendant could not produce an operator's license or registration for the truck. He told Famulari that the truck was a rental from Enterprise. Famulari asked Defendant for his name and date of birth. He also asked if he could open the passenger door to locate the VIN number off the inside of the door frame. Defendant agreed. Once he opened the door, Famulari observed a partially smoked marijuana "blunt" in an ashtray on the console.

Famulari then went back to his patrol car, ran Defendant's information on his computer and spoke with dispatch. Another officer arrived on the scene and approached Famulari in his patrol car. Famulari stated "I already have odor" and explained Defendant and a child were the

only ones in the vehicle. Dispatch informed Famulari that Defendant had an NCIC "hit" for an order for arrest ("OFA") originating from a misdemeanor probation violation in Gaston County. In an attempt to reduce the jail population during COVID, Mecklenburg County Courts were not enforcing local orders for arrest on misdemeanors at that time. Because Defendant's OFA was for an out of county violation, Famulari asked dispatch to contact the jail to determine whether they would accept Defendant.

Famulari returned to the truck and ordered Defendant out. He advised him that there was a "strong odor of marijuana" and that he had a "couple of warrants." He placed Defendant in handcuffs and moved him to the front of the patrol car. He then patted Defendant down. Defendant stated he was aware of the order for arrest and they discussed the situation. Famulari was ultimately told by dispatch that the order for arrest would not be honored.

Based upon the odor of marijuana and plain view sighting of the marijuana "blunt", the officers searched the interior of the truck. They located a clear bag of marijuana and a firearm between the driver's seat and console. A scale was found in the driver's side door. Defendant was placed under arrest for possession of firearm by a felon, carrying a concealed weapon, possession of marijuana, possession of drug paraphernalia, and the misdemeanor probation violation from Gaston County.

On March 20, 2021, Famulari obtained a search warrant for Defendant's cell phone that was seized at the time of his arrest. On March 29, 2021, Famulari obtained another search warrant for Defendant's DNA to compare with the seized firearm.

## II. ANALYSIS

Defendant moves to suppress all evidence seized from the vehicle on March 15, 2021. He asserts that his Fourth Amendment rights were violated when police unlawfully seized him and

searched his truck. Defendant also moves for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). He asserts that the warrants for his cell phone and DNA contained deliberate and demonstrable falsehoods and/or a reckless disregard for the truth.

**A. Traffic Stop of the Vehicle**

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011), abrogated in part on other grounds by Rodriguez v. United States, 575 U.S. 348, 355-57 (2015), (citing Whren v. United States, 517 U.S. 806, 809–10 (1996)). "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." Wilson v. Arkansas, 514 U.S. 927, 931 (1995); see also Whren, 517 U.S. at 810 ("An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.").

When a law-enforcement officer has reasonable suspicion that a driver has violated traffic laws, he may stop the vehicle to investigate. Rodriguez, 575 U.S. at 354 ("A seizure for a traffic violation justifies a police investigation of that violation."). Whether reasonable suspicion justified a traffic stop is determined by the totality of the circumstances. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011).

In evaluating the reasonableness of a traffic stop, the court must consider: first, whether the officer's reason for the traffic stop was legitimate, and second, were "the officer's actions during the seizure "reasonably related in scope" to the basis for the traffic stop. United States v. Williams, 808 F.3d 238, 245 (4th Cir. 2015) (quoting Whren, 517 U.S. at 810). Based upon the

evidence presented, the Court finds Famulari's testimony credible and concludes that Defendant was speeding and his truck displayed an improper tag. Therefore, Famulari had reasonable, articulable suspicion to stop the vehicle. The stop of Defendant's vehicle was proper and did not violate the Fourth Amendment.

### B. Extension of the Traffic Stop

Defendant does not dispute the initial stop of his vehicle but argues that the officers violated his Fourth Amendment rights when they prolonged the traffic stop without reasonable suspicion or probable cause. "A routine traffic stop becomes an unreasonable seizure when law enforcement impermissibly exceeds the stop's scope or duration." United States v. Hill, 849 F.3d 195, 200 (4th Cir. 2017) (citing Illinois v. Caballes, 543 U.S. 405, 407 (2005)). "Even a de minimis extension violates the Fourth Amendment." United States v. Miller, 54 F.4th 219, 228 (4th Cir. 2022). "If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion or receive the driver's consent." Digiovanni, 650 F.3d at 507 (citing United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008)).

Here, Defendant argues that the officers had neither consent nor reasonable suspicion when they extended the scope of the traffic stop beyond investigating the speeding and improper tag violations. The Court disagrees.

When determining whether reasonable suspicion exists, courts look to the totality of the circumstances and analyze whether the officer has a particularized, objective basis for suspecting legal wrongdoing. United States v. Arvizu, 534 U.S. 266, 273 (2002). The reasonable suspicion standard requires "'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause.'" Kansas v. Glover, —— U.S. ——, 140 S. Ct. 1183, 1187 (2020) (quoting Prado Navarette v. California, 572 U.S. 393, 397

(2014)). In order to meet this standard, an "officer's suspicions must ... be more than an 'inchoate and unparticularized suspicion or hunch'" of criminal activity. United States v. Johnson, 599 F.3d 339, 345 (4th Cir. 2010). Rather, "a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimal level of objective justification' for the belief that criminal activity is afoot." United States v. Bowman, 884 F.3d 200, 213 (4th Cir. 2018) (quoting United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008)). We "cannot reasonably demand scientific certainty ... where none exists,'' and "must permit officers to make 'commonsense judgments and inferences about human behavior.'" Glover, 140 S. Ct. at 1188 (quoting Illinois v. Wardlow, 528 U.S. 119, 125 (2000)).

In this case, Famulari testified that he immediately smelled marijuana upon approaching the vehicle. He also testified that he saw a marijuana blunt located in the cup holder in the center console of the truck when he opened the passenger door to obtain the rental vehicle's VIN. Additionally, as seen on the body camera video, while Famulari was in his patrol car running Defendant's name on his computer, he told Officer Barrett that "he already has odor" inside the truck. The Court finds that the odor of marijuana and the marijuana blunt in plain view provided reasonable suspicion to extend the traffic stop.

Significantly, within five minutes of initiating the traffic stop, Famulari learned that Defendant had an outstanding OFA. Knowledge that the occupant of a vehicle has an outstanding OFA provides a sufficient basis to extend a traffic stop. See United States v. Hensley, 469 U.S. 221, 232 (1985). Although Famulari later learned that the jail might not accept Defendant based upon COVID concerns, this does not negate the validity of the warrant. When Famulari returned to the truck and asked Defendant to step out of the vehicle, he knew there was an outstanding OFA

and Defendant confirmed that he knew about the warrant. At that moment, Famulari had a basis to arrest Defendant.

Even assuming arguendo that the arrest warrant was somehow invalid because the jail would not accept Defendant, courts have repeatedly declined to suppress evidence where officers incorrectly, but in good faith, relied on an OFA. See Arizona v. Evans, 514 U.S. 1, 4 (1995) (no exclusion where officer based initial arrest on an outstanding warrant but the warrant had been quashed seventeen days earlier, and administrators in charge of the records did not update the law enforcement database); Herring v. United States, 555 U.S. 135, 129 (2009) (no exclusion where an officer based an initial arrest on a report from a neighboring county about an outstanding warrant. The warrant had been recalled five months earlier, but the database had not been updated. The arresting officer was alerted to the error just fifteen minutes after the arrest.).

The Court finds that the odor of marijuana and the marijuana blunt in plain view along with knowledge that Defendant had an outstanding OFA provided reasonable suspicion to extend the traffic stop.

**C. Search of the truck**

Defendant next argues that the officer's search of the truck violated the Fourth Amendment because there was no probable cause to arrest him and he was not within reach of the passenger compartment during the search. The Court disagrees.

As the Fourth Circuit explained in United States v. Kelly, 592 F.3d 586 (4th Cir. 2010):

> Probable cause is not readily, or even usefully, reduced to a neat set of legal rules. However, the Supreme Court has described it as existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found. When assessing probable cause, we must examine the facts from the standpoint of an objectively reasonable police officer, giving due weight to inferences drawn from those facts by ... local law enforcement officers.

Id. at 591-92 (internal citations and quotation marks omitted). When officers have probable cause to believe that a car contains evidence of criminal activity, they are authorized to search any area of the car where that evidence might be found. United States v. Ross, 456 U.S. 798, 810-821 (1982).

The Fourth Circuit has "repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place." United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004). Therefore, "when marijuana is believed to be present in an automobile based on the odor emanating therefrom, we have found probable cause to search the automobile." Id.; see also, e.g., United States v. Champion, 609 Fed. App'x 122, 125 (4th Cir. 2015)(finding the strong odor of marijuana "is the most obvious factor supporting a finding of probable cause."); United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010)(finding probable cause justifying a vehicle search when an officer "smelled the odor of marijuana emanating from the vehicle"); United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002)(holding that an officer "clearly had probable cause to search the passenger compartment of [the] vehicle without a warrant, based on the burning marijuana he smelled as he approached the car"). The Court finds it was reasonable for Famulari to conclude that there was a "fair probability" that marijuana was located within the car. See Kelly, 592 F.3d at 592.

Defendant argues that the legalization of hemp affects the validity of a search based upon the odor of burnt marijuana or hemp. He relies on publications by the North Carolina State Bureau of Investigation stating marijuana's odor and physical characteristics are indistinguishable from legal hemp. See Doc. 29 at Ex. 7. He also cites to State v. Parker, 860 S.E.2d 21, 29 (N.C. Ct. App. 2021), where the court held that "holdings" that the smell or visual identification of marijuana

gives rise to probable cause "may need to be re-examined." Defendant urges this Court to apply an "odor plus" standard.

The Court declines to do so and finds Judge Whitney's analysis in United States v. Brooks, No. 3:19-cr-00211-FDW-DCK, 2021 WL 1668048 (W.D.N.C. Apr. 28, 2021), applicable here:

> Assuming, arguendo, hemp and marijuana smell "identical," then the presence of hemp does not make all police probable cause searches based on the odor unreasonable. The law, and the legal landscape on marijuana as a whole, is ever changing but one thing is still true: marijuana is illegal. To date, even with the social acceptance of marijuana seeming to grow daily, precedent on the plain odor of marijuana giving law enforcement probable cause to search has not been overturned. Therefore, if hemp does have a nearly identical smell to marijuana — and hemp was present — it would suggest to this court that TFO Newman was even more reasonable to believe evidence of marijuana was present.
> As such, the Magistrate Judge was correct in finding that TFO Newman had probable cause to search the vehicle based on the plain smell and view of marijuana in the vehicle. (Doc. No. 100, p. 26). Likewise, the Magistrate was correct in finding that once Newman had established probable cause to believe drug contraband was in the vehicle, he was no longer restricted to the limited scope of a routine traffic stop.

Id. at *4 (citations omitted).

Famulari testified that he smelled an odor of marijuana coming from the truck. He is heard on his body camera footage telling Officer Barrett that he "already has odor." He also observed a marijuana blunt in plain view. Therefore, the Court finds that Famulari had probable cause to search Defendant's truck.

### D. Franks Hearing

Defendant argues that the search warrants Famulari obtained for his cell phone and DNA relied on knowing and intentional falsehoods and omissions that were material to the probable cause determination.

In Franks v. Delaware, the Supreme Court held "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard

for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." 438 U.S. 154, 156 (1978).

In addition to specifically identifying the portion of the affidavit claimed to be false and providing reasons for the falsity, the defendant must furnish "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or explain their absence. United States v. Tate, 524 F.3d 449, 454 (4th Cir. 2008) (quoting Franks, 438 U.S. at 171). The defendant's showing "must be more than conclusory" and accompanied by "a detailed offer of proof." Franks, 438 U.S. at 171. The defendant's burden to demonstrate entitlement to a Franks hearing is "a heavy one to bear." Tate, 524 F.3d at 454.

When relying on omitted facts from a search warrant affidavit rather than affirmative false statements, a defendant faces an even greater burden. United States v. Clenney, 631 F.3d 658, 664 (4th Cir. 2011) (citing Tate, 524 F.3d at 454–55). Defendant "must show that the omissions were 'designed to mislead'" or "made in reckless disregard of whether they would mislead," and that the omissions "would defeat probable cause." United States v. Clenney, 631 F.3d 658, 664 (4th Cir. 2011) (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990).

The Fourth Circuit has recognized that an affidavit drafted by non-lawyers submitted in support of a search warrant application "cannot be expected to include ... every piece of information gathered in the course of an investigation". Thus, any decision to omit information is "intentional" in that it was done knowingly. Tate, 524 F.3d at 455 (quoting Colkley, 899 F.2d at 300). But "Franks clearly requires defendants to allege more than 'intentional' omission in this weak sense." Colkley, 899 F.2d at 301. "To obtain a Franks hearing the defendant must show that the omission is the product of a 'deliberate falsehood or of reckless disregard for the truth.'" Id.

(quoting Franks, 438 U.S. at 171). The information omitted from the affidavit must also be material. Id.

In United States v. Wharton, 840 F. 3d 163, 168-69 (4th Cir. 2016), the Fourth Circuit focused on whether an alleged omission was "material." An omission must be more than merely relevant. "Even if relevant, information is not material unless its inclusion in the affidavit would defeat probable cause." Id. (citing Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). To assess materiality, the court should "insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected affidavit establishes probable cause, there is no Franks violation." Id. at 169.

Defendant argues that he can make the required substantial preliminary showing that Famulari knowingly or recklessly relied on false information and deliberately or recklessly omitted information in his search warrant affidavits. He argues that Famulari omitted information from the affidavits that he had been following Defendant for weeks and recently had an unfruitful encounter with him; that on the night of the arrest he had been following Defendant waiting for a pretext to stop him; and that at the time he searched the truck, Defendant was arrested, in handcuffs and under the control of two other officers. He also argues that Famulari made false statements that he started to run Defendant's NCIC after the stop but the body camera video reflects that Famulari already knew Defendant before the stop; that Famulari falsely claimed he ordered Defendant out of the truck before dispatch confirmed the NCIC "wanted person hit" while the video reflects that he ordered him out of the truck after he knew the jail would not accept him for a misdemeanor probation violation; that he made false statements about the smell of marijuana when he approached the vehicle because the other officers did not report the odor in their reports;

and that he made false statements about the marijuana blunt he saw in the center console while the video reflects that he did not have a view of the center console.

The Court finds that Defendant has failed to make the requisite showing for a Franks hearing. Based upon evidence and testimony presented at the hearing and discussed in detail above, Famulari's statements in the affidavits have not been shown to be deliberately false or made with a reckless disregard for the truth. Nor were any of the challenged statements or omissions shown to be essential to the magistrate's finding of probable cause on either warrant. Since Defendant has failed to make a sufficient showing to justify a Franks hearing, the undersigned respectfully recommends the Court deny his Motion.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned concludes that the stop of Defendant's vehicle and the search were constitutionally sound. The stop was lawful based upon Defendant's commission of the traffic offenses of speeding and improper tag. The search of the truck was lawful based upon the odor of marijuana and the presence of a marijuana blunt on the console. Defendant has failed to make a sufficient showing to justify a hearing under Franks. The undersigned respectfully recommends that the Defendant's "Motion to Suppress Evidence and Motion for Franks Hearing," Doc. No. 29, be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of the same. Failure to file objections to this Memorandum with the District Judge constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); Wells v.

Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845–46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: March 6, 2023

David S. Cayer
United States Magistrate Judge