UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CR-00018-FDW-SCR

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| DARRELL ALAN HARRIS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's Objections, (Doc. No. 38), to the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 34). Defendant seeks review of the M&R's recommendation that this Court deny Defendant's Motion to Suppress Evidence, (Doc. No. 29). This matter is now ripe for review.

For the reasons set forth below, the M&R is AFFIRMED and ADOPTED IN PART and AMENDED IN PART; Defendant's Objections are SUSTAINED IN PART and OVERRULED IN PART; and Defendant's Motion to Suppress is DENIED.

## I. BACKGROUND

Defendant was indicted on January 20, 2022, on the charge of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1). On January 20, 2023, Defendant filed the instant motion to suppress. The suppression motion seeks to suppress all evidence taken during and derivative from a stop and search of a vehicle that occurred on March 15, 2021.

The magistrate judge conducted an evidentiary hearing on February 24, 2023. At hearing, the Government presented the testimony of three police officers with the Charlotte-Mecklenburg Police Department who were involved in the events in question: Officer Charles Famulari, Officer Jabari Barrett, and Officer Joseph Muha. During the hearing, the court admitted and viewed

1

portions of the photos and videos captured during the traffic stop by the officers' body worn cameras. On March 6, 2023, the magistrate judge issued the M&R to deny the motion to suppress. (Doc. No. 34). Defendant timely filed its Objections to the M&R on April 3, 2023, (Doc. No. 38). The Government did not file a response to the Objections; however, this Court has reviewed the initial pleadings, as well as the evidence and argument presented by both parties during the hearing.

## II. STANDARD OF REVIEW

A district court may refer a motion to suppress to a magistrate judge for a recommendation pursuant to Federal Rule of Criminal Procedure 59(b)(1). See Fed. R. Crim. P. 59(b)(1). A party may file written objections to a magistrate judge's memorandum and recommendation within fourteen days of being served with a copy of the memorandum and recommendation. 28 U.S.C § 636(b)(1). "'Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.'" Morgan v. N.C. Dep't of Health and Human Servs., 421 F. Supp. 2d 890, 893 (W.D.N.C. 2006) (emphasis in original) (quoting Thomas v. Westinghouse Savannah River Co., 21 F. Supp. 2d 551, 560 (D.S.C. 1997)); see also Battle v. U.S. Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987) ("Parties filing objections must specifically identify those findings objected to.") (cleaned up). "Frivolous, conclusive or general objections need not be considered by the district court." Battle, 834 F.2d at 421 (quotation omitted). "A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge." Aldrich v. Bock, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

Thus, "[a]n 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." Id.; see also Jones v. Hamidullah, No. 2:05-2736-

2

PMD-RSC, 2005 WL 3298966 at *3 (D.S.C. Dec. 5, 2005) (noting objections to an M&R "on the whole are without merit in that they merely rehash [the] general arguments and do not direct the court's attention to any specific portion of the [report]").  General or conclusory objections result not only in the loss of *de novo* review by the district court but also in waiver of appellate review. Tyler v. Beinor, 81 F. App'x 445, 446 (4th Cir. 2003) (per curiam); United States v. Woods, 64 F. App'x 398, 399 (4th Cir. 2003) (per curiam).  If proper objections are made, a district court will review the objections under a *de novo* standard. 28 U.S.C. § 636(b)(1).  Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the M&R.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

Upon careful review of the record, "The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c).

Additionally, a reviewing court must take a deferential standard regarding the credibility of witnesses where the magistrate judge sits as a trier of fact. See McNairn v. Sullivan, 929 F.2d 974, 977 n. 3 (4th Cir. 1991); United States v. MacConnell, 2010 WL 3399166, *2 (W.D.N.C. 2010); United States v. Brooks, 2006 WL 695079 at *1 (W.D.N.C.2006). Some courts have explicitly adopted a deferential standard of review for credibility determinations when the magistrate judge heard the live testimony and observed the demeanor of the witnesses. See, e.g., United States v. Gibbs, 421 F.3d 352, 357 (5th Cir. 2005) ("In [making a de novo determination], the district court need not re-hear testimony from the suppression hearing; its deference to the magistrate's credibility determinations is appropriate when they are supported by the record.").

### III. FINDINGS OF FACT

The magistrate judge entered findings of fact based on the testimony and evidence received during the hearing. (See Doc. No. 34, pp. 1-3). Defendant lodges specific factual objections to the facts as laid out in the M&R, with specific citations to the hearing transcript. In short, Defendant argues the evidence contradicts eleven facts found in the M&R. (Doc. No. 38, pp. 4-8).

With benefit of the transcript of the evidentiary hearing, the Court has closely reviewed each of the factual objections and finds only one objection to be supported by the testimony in the record. The M&R indicates the traffic stop occurred on "March 15, 2023," (Doc. No. 34, p. 2); however, the evidence clearly indicates the stop occurred on March 15, 2021. It appears the M&R's reference to 2023 instead of 2021 is a typographical error, and the Court sustains the objection and finds as fact that the traffic stop at issue occurred on March 15, 2021.

Otherwise, objections (1) and (3) through (11) as outlined in Defendant's filing are overruled. In short, the premise underlying these objections is that the magistrate judge incorrectly assessed the witnesses' credibility or failed to account for explanations made during cross-examination. These objections suggest the M&R ignored factual discrepancies, or failed to consider the full factual record, because the magistrate judge determined the officers' testimony to be credible. In overruling these objections, the Court notes that a reviewing court must take a deferential standard regarding the credibility of witnesses where the Magistrate Judge sits as a trier of fact. See United States v. Brooks, No. 1:05CR248-1, [2006 BL 36801], 2006 U.S. Dist. LEXIS 25626, at *3-4, 2006 WL 695079, at *1–2 (W.D.N.C. March 15, 2006); United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008); McNairn v. Sullivan, 929 F.2d 974, 977 n. 3 (4th Cir. 1991); United States v. Stoots, No. 97-4038, [129 F.3D 1261], 1997 U.S. App. LEXIS 32787, at *2, 1997 WL 724503, at *1 (4th Cir. Nov. 20, 1997) (unpublished table decision). The Court agrees with

the magistrate judge's findings of witness credibility with regard to the officers' testimony. The magistrate judge presided over the evidentiary hearing and was in the best position to make determinations regarding credibility. Furthermore, the undersigned has reviewed the record, particularly witness testimony, and finds the magistrate judge's findings of credibility to be consistent with the evidence in the record.

Upon *de novo* review, the Court finds the magistrate judge's recitation of the facts in the M&R as amended herein to be supported by the evidence and record, and since they are adopted with modification, they are restated to provide context for this Order:

> On or around March 8, 2021, Officer Famulari initiated a voluntary contact with Defendant Darrell Harris in the vicinity of Catherine Simmons Drive and August Street in Charlotte. Famulari was part of an increased police presence in this high crime area. Defendant was operating a white Dodge Ram truck. A tag reading "TAG APPLIED FOR" was displayed on the truck. Famulari advised Defendant that his tag was improper. During the course of their contact, Defendant gave the officer a fictitious name. Famulari did not document the contact and Defendant was not detained.
>
> On March 15, 202[1], Famulari spotted Defendant operating the same truck back in the area of Catherine Simmons Drive. The truck was still displaying the improper tag. The officer was going to initiate a stop for the improper tag. As Famulari approached in his cruiser, Defendant drove away and entered I-77 from La Salle Street. Defendant accelerated and Famulari reached a speed of ninety miles per hour attempting to stop the truck. Defendant pulled onto the shoulder of I-77 near Morehead Street. Famulari approached the passenger side of the truck. An eight year old child in the back seat was the only passenger. The officer detected a strong odor of marijuana coming from inside the truck. He advised Defendant that he was being stopped for the improper tag and for driving "way too fast." Defendant could not produce an operator's license or registration for the truck. He told Famulari that the truck was a rental from Enterprise. Famulari asked Defendant for his name and date of birth. He also asked if he could open the passenger door to locate the VIN number off the inside of the door frame. Defendant agreed. Once he opened the door, Famulari observed a partially smoked marijuana "blunt" in an ashtray on the console.
>
> Famulari then went back to his patrol car, ran Defendant's information on his computer and spoke with dispatch. Another officer arrived on the scene and approached Famulari in his patrol car. Famulari stated "I already have odor" and explained Defendant and a child were the only ones in the vehicle. Dispatch

5

informed Famulari that Defendant had an NCIC "hit" for an order for arrest ("OFA") originating from a misdemeanor probation violation in Gaston County. In an attempt to reduce the jail population during COVID, Mecklenburg County Courts were not enforcing local orders for arrest on misdemeanors at that time. Because Defendant's OFA was for an out of county violation, Famulari asked dispatch to contact the jail to determine whether they would accept Defendant.

Famulari returned to the truck and ordered Defendant out. He advised him that there was a "strong odor of marijuana" and that he had a "couple of warrants." He placed Defendant in handcuffs and moved him to the front of the patrol car. He then patted Defendant down. Defendant stated he was aware of the order for arrest and they discussed the situation. Famulari was ultimately told by dispatch that the order for arrest would not be honored.

Based upon the odor of marijuana and plain view sighting of the marijuana "blunt", the officers searched the interior of the truck. They located a clear bag of marijuana and a firearm between the driver's seat and console. A scale was found in the driver's side door. Defendant was placed under arrest for possession of firearm by a felon, carrying a concealed weapon, possession of marijuana, possession of drug paraphernalia, and the misdemeanor probation violation from Gaston County.

On March 20, 2021, Famulari obtained a search warrant for Defendant's cell phone that was seized at the time of his arrest. On March 29, 2021, Famulari obtained another search warrant for Defendant's DNA to compare with the seized firearm.

(Doc. No. 34, pp. 1-3).

### IV. ANALYSIS

Defendant objects to the M&R's legal conclusions that the officers had reasonable suspicion to extend the traffic stop and probable cause to search Defendant's truck. Defendant also objects to the M&R's conclusion that Defendant failed to make a sufficient showing to justify a *Franks* hearing. Following *de novo* review, the Court overrules these objections and affirms the M&R.

A. Extension of the Traffic Stop

Defendant does not object to the basis for the traffic stop and contends the officers improperly prolonged the routine traffic stop in violation of the Fourth Amendment. The M&R

6

concluded the odor of marijuana and marijuana blunt in plain view provided reasonable suspicion to extend the traffic stop, and alternatively, the odor, blunt, and outstanding misdemeanor probation violation provided reasonable suspicion to extend the traffic stop. The Court agrees.

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment and must be reasonable under the circumstances. United States v. Palmer, 820 F.3d 640, 648 (4th Cir. 2016) (citing Delaware v. Prouse, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." Rodriguez v. United States, 575 U.S. 348, 354 (2012). "[A]n officer's focus must remain on the bases for the traffic stop, in that the stop must be sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." Palmer, 820 F.3d at 649 (cleaned up). "[A]n officer cannot investigate a matter outside the scope of the initial stop unless he receives the motorist's consent or develops reasonable, articulable suspicion of ongoing criminal activity." Id. at 649-50. To show the existence of reasonable suspicion, "a police officer must offer 'specific and articulable facts' that demonstrate at least 'a minimal level of objective justification' for the belief that criminal activity is afoot." United States v. Branch, 537 F.3d 328, 337 (4th Cir. 2008) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). When assessing whether reasonable suspicion existed, the Court must consider the evidence individually and as part of the totality of the circumstances, while remaining "mindful of the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Miller, 54 F.4th 219, 228–29 (4th Cir. 2022)

As an initial matter, the Court rejects Defendant's argument that the officers extended the traffic stop to conduct a "fishing expedition" for other possible criminal offenses. The facts indicate Officer Famulari initiated the traffic stop because of excessive speeding and the improper

7

tag on his vehicle. He approached the car on the passenger side of the vehicle because of the speed of vehicles travelling on the roadway and to avoid being hit by those cars. When Defendant rolled down the window during this initial encounter, Officer Famulari "got an instant smell, strong smell of marijuana coming from the vehicle." (Doc. No. 37, p. 17). After speaking briefly with Defendant and receiving Defendant's permission to do so, Officer Famulari opened the passenger door to see if he could find a vehicle identification number. (Id. at p.18). When Officer Famulari opened the door, he observed what appeared to be a partially smoked marijuana blunt inside the ashtray. (Id. at p. 19-20). This occurred "when [he] initially made my first approach to the vehicle and asked Mr. Harris if I could open the door and look for the VIN number."[1] (Id. at 40). At this point, no "fishing expedition" was necessary. During the initial encounter and within the first few minutes of the stop, Officer Famulari had a basis to form the reasonable belief that drug contraband was in the vehicle. In other words, he had objective, articulable reasons justifying his reasonable suspicion to prolong the stop.

Defendant also objects to the M&R's legal conclusion that Officer Famulari's knowledge of an outstanding probation violation provided reasonable suspicion to extend the stop and detain

---

[1] Defendant points to Officer Farmulari's reports that indicated he observed the blunt after the stop had been extended; however, during the hearing, Officer Farmulari's direct and cross-examination testimony acknowledged those reports as incorrect and indicated he initially first the blunt upon his initial encounter with Defendant and again when he reapproached the vehicle. (Doc. No. 37, pp. 76-82). Defendant's argument speaks to the credibility of the witness, and the Court finds Officer Farmulari's testimony during the hearing to be credible notwithstanding prior inconsistent statements acknowledged by and explained by the witness. Office Muha corroborated the testimony that the marijuana blunt was visible from the passenger side window. (Id. at p. 104). Nevertheless, based on existing precedent cited below, the presence of the marijuana odor alone is sufficient to establish probable cause, so the odor alone could also support reasonable suspicion. "Reasonable suspicion," the standard to prolong the stop, is "a less demanding standard than the probable cause or preponderance of evidence standard." United States v. McNeil, No. 20-4289, 2022 WL 130983, at *2 (4th Cir. Jan. 13, 2022), cert. denied, 142 S. Ct. 2729, (2022) (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Therefore, even accepting Defendant's argument that Officer Famulari did not observe the blunt until later during the stop, the marijuana odor supports a reasonable suspicion of ongoing criminal activity.

Defendant. The Court disagrees and adopts the reasons stated in the M&R. In Palmer, the Fourth Circuit concluded an officer's "brief investigation into [the defendant's] criminal record fell squarely within the range of actions permitted under *Terry's* second prong." 820 F.3d at 651 (referring to two-prong standard articulated in Terry v. Ohio, 392 U.S. 1, (1968), assessing first, whether the articulated bases for the traffic stop were legitimate, and second, whether the actions of the authorities during the traffic stop were "reasonably related in scope" to the bases for the seizure). Officer Famulari testified as to his knowledge that Defendant was a "wanted person" because of outstanding probation violation for Defendant that was issued from another county. (Doc. No. 37, p. 64). Officer Famulari testified that although a similar violation issued in Mecklenburg County would not support an arrest at that time because of COVID protocols, he needed additional time to verify whether the violation from *another* county justified arrest. Furthermore, when questioned by Officer Famulari during the stop, Defendant acknowledged the existence of the violation. This conduct, particularly when coupled with the odor of marijuana and marijuana blunt in plain view, provided a legal basis to extend the traffic stop and to detain Defendant.

    B.    Search of the Vehicle

Defendant objects to the M&R's conclusion that Officer Famulari had probable cause to search his vehicle. It is well-settled law that "[w]hen an officer performing a traffic stop can detect the odor of an illegal substance coming from the stopped vehicle, the officer then possesses probable cause to search that vehicle." United States v. Davis, No. 20-4315, 2022 WL 94529, at *1 (4th Cir. Jan. 10, 2022) (citing United States v. Lewis, 606 F.3d 193, 198 (4th Cir. 2010); affirming denial of motion to suppress; "As soon as the officers on scene smelled marijuana, they possessed probable cause to search the vehicle, and they were entitled to order [the defendant] out

9

of the vehicle while their search was accomplished."); see also Palmer, 820 F.3d at 650 ("an officer's detection of marijuana odor is sufficient to establish such probable cause" (citing United States v. Carter, 300 F.3d 415, 422 (4th Cir. 2002)); United States v. Simon, 600 F. App'x 89, 91 (4th Cir. 2015) "We have repeatedly held that an officer who smells marijuana upon approaching a vehicle during a lawful traffic stop has probable cause to search those parts of the vehicle where that marijuana may be contained." (citations omitted).

Defendant contends the odor and blunt are insufficient indicators of criminal activity to support probable cause to search the vehicle because hemp—which Defendant argues creates the same odor as marijuana—is legal in North Carolina. This argument is without merit under existing precedent in this jurisdiction, and the Court declines to extend the law based on the nonbinding case law and articles cited by Defendant. "Not surprisingly, this topic has created much debate in the last few years as more and more states legalize cannabis-derived substances." Moore v. State, 211 N.E.3d 574, 579 (Ind. Ct. App. 2023) (collecting cases).[2] As the M&R acknowledges, this Court has already ruled, "To date, even with the social acceptance of marijuana seeming to grow daily, precedent on the plain odor of marijuana giving law enforcement probable cause to search has not been overturned." United States v. Brooks, No. 319CR00211FDWDCK, 2021 WL 1668048, at *4 (W.D.N.C. Apr. 28, 2021) (citations omitted). And in United States v. Harris, the

---

[2] Moore, like many of the cases cited by Defendant, is not binding on this Court; however, the Court finds Moore's analysis particularly persuasive. In that case, the court concluded the officer's detection of the odor of marijuana immediately upon his arrival at the open window of the car driven by the defendant provided probable cause for him to search the car under both the Fourth Amendment to the United States Constitution and the Indiana Constitution, which text mirrors the Fourth Amendment. "Several courts around the United States in jurisdictions where hemp is legal and marijuana remains illegal have arrived at the same conclusion that officers may still rely on the odor of marijuana to establish probable cause to investigate marijuana possession." Isaac v. State, No. 04-22-00203-CR, 2023 WL 5249619, at *2 (Tex. App. Aug. 16, 2023) (collecting cases, including State v. Teague, 286 N.C.App. 160, 879 S.E.2d 881, 896 (2022); also recognizing some courts decline to address whether detecting marijuana's distinctive odor *alone* can still establish probable cause but conclude that it may still comprise part of the *totality of the circumstances* in support of probable cause to investigate marijuana possession. (citing State v. Johnson, ––– N.C. App. ––––, 886 S.E.2d 620, 632 (2023); Hatcher v. State, 342 So. 3d 807, 808–09 (Fla. Dist. Ct. App. 2022); State v. Parker, 277 N.C.App. 531, 860 S.E.2d 21, 29 (2021)).

United States District Court for the Eastern District of North Carolina explained that "the smell of marijuana alone . . . supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" No. 4:18-CR-57-FL-1, 2019 WL 6704996, at *3 (E.D.N.C. Dec. 9, 2019) (emphasis added) (quoting Illinois v. Gates, 462 U.S. 213, 235, reh'g denied, 463 U.S. 1237 (1983)). Indeed, the Supreme Court has long held that "sufficient *probability*, *not certainty*, is the touchstone of reasonableness under the Fourth Amendment." Hill v. California, 401 U.S. 797, 804 (1971) (emphasis added).

Accordingly, a search based on the odor of marijuana—notwithstanding any similarity to the smell of legal hemp—does not negate a finding of probable cause because law enforcement's conduct must be reasonable under the circumstances and such reasonableness does not require conclusive proof that a defendant committed a crime. Here, Officer Famulari testified he smelled the odor of marijuana when Defendant rolled down the vehicle window. Under existing Fourth Circuit precedent, this provided probable cause to search the vehicle. See, e.g., Lewis, 606 F.3d at 198; Palmer, 820 F.3d at 650; Carter, 300 F.3d at 422. Even under Defendant's articulated "odor plus" standard to establish probable case, Officer Famulari had the additional factor of observing the blunt in the vehicle during this initial encounter with Defendant, which—when under the totality of the circumstance—also provided probable cause to search.

Defendant also argues error in the M&R's conclusion that the officers' search of the vehicle's interior exceeds the scope permitted by law. Under the "automobile exception," warrantless searches are permissible under the Fourth Amendment if a vehicle is "readily mobile" and if probable cause exists to believe it contains contraband or evidence of a crime. See, e.g., Maryland v. Dyson, 527 U.S. 465, 466 (1999); Pennsylvania v. Labron, 518 U.S. 938, 940 (1996);

11

United States v. Alston, 941 F.3d 132, 138-40 (4th Cir. 2019), cert. denied, 140 S. Ct. 1221 (2020); see also United States v. Ross, 456 U.S. 798, 805 (1982) (holding a warrantless automobile search is permissible if "made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction.").

As explained above, the officers had probable cause, so "the automobile exception permits 'the search of *every part* of the vehicle . . . that may conceal the object of the search.'" Alston, 941 F.3d at 138, (quoting Ross, 456 U.S. at 825 (1982) (emphasis added); see also United States v. Bullock, 94 F.3d 896, 899 (4th Cir. 1996) (approving warrantless search of a vehicle's "secret compartments"). Defendant's reliance on Arizona v. Gant, 556 U.S. 332 (2009), is unavailing here.[3] The Court agrees with the M&R's conclusions that the officers had probable cause to search Defendant's vehicle, and the search did not exceed the scope allowed by law. The Court overrules Defendant's objections otherwise.

C. Search Warrants and Franks Hearing

Defendant also challenges the search warrants obtained to search his cell phone and DNA, and he contends the M&R erred in denying a Franks hearing to challenge the veracity of law enforcement's declarations in the search warrant affidavits. See Franks v. Delaware, 438 U.S. 154 (1978). "A Franks hearing provides a criminal defendant with a narrow way to attack the validity"

---

[3] As the Fourth Circuit has explained, the automobile exception and the holding in Gant are separate inquiries:
> Gant emphasized that its decision in no way affected the validity or scope of the automobile exception, noting that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found." Gant, 556 U.S. at 347, 129 S.Ct. 1710. This court, in turn, similarly confirmed the continued viability of this exception in the wake of Gant, holding that even though a warrantless vehicle search might have exceeded the limits articulated in Gant, it was nevertheless constitutional because it was supported by probable cause. See United States v. Kellam, 568 F.3d 125, 136 n. 15 (4th Cir. 2009).

United States v. Baker, 719 F.3d 313, 319 (4th Cir. 2013)

12

of a search-warrant affidavit. United States v. Moody, 931 F.3d 366, 370 (4th Cir. 2019). Along with affirmative false statements, "Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis omitted). The Fourth Circuit has explained the burden a defendant carries to justify a Franks hearing:

> To obtain a Franks hearing, a defendant must make a substantial preliminary showing to overcome the presumption of validity with respect to the affidavit supporting the search warrant. When a defendant relies on an omission, this heavy burden is even harder to meet. In that situation, a defendant must provide a substantial preliminary showing that (1) law enforcement made an omission; (2) law enforcement made the omission knowingly and intentionally, or with reckless disregard for the truth, and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause. If the district court finds that a defendant has made this threshold showing, it must hold a Franks hearing to develop evidence on the affidavit's veracity. If after the hearing the defendant establishes perjury or reckless disregard by a preponderance of the evidence and shows that the inclusion of the omitted evidence would defeat the probable cause in the affidavit, the search warrant must be voided and the fruits of the search excluded.

United States v. Haas, 986 F.3d 467, 474 (4th Cir.) (cleaned up), cert. denied, 142 S. Ct. 292, 211 L. Ed. 2d 136 (2021)

Defendant identifies three "omissions" and four "false claims" by Officer Famulari in his affidavits applying for search warrants, which Defendant contends satisfies the threshold showing to justify a Franks hearing. These arguments all were addressed cogently in the M&R. (Doc. No. 34, pp. 11-12). Defendant makes no new contentions in his objection, nor does he point to specific legal error in the M&R. To some extent, Defendant's arguments regarding the basis for a Franks hearing have also been rejected in the Court's above analysis of the credibility of officers' testimony, including the inconsistencies, and the existence of probable cause. Upon careful review of the M&R and the record generally, the Court finds no clear error in the magistrate judge's treatment of these issues and adopts the recommendations as its own.

13

Case 3:22-cr-00018-FDW-SCR    Document 45    Filed 09/15/23    Page 13 of 14

D.  Clear Error Review

As set forth above, the Court overrules Defendant's specific objections to the M&R. The M&R's remaining conclusions, therefore, are reviewed for clear error. In the absence of a specific, proper, and timely filed objection, the Court need not give any explanation for adopting the M&R. Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200. Having carefully reviewed the M&R, the Court finds no clear error as to its findings and conclusions beyond those outlined above. Accordingly, this Court AFFIRMS the remainder of the M&R.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that for the foregoing reasons, the Magistrate Judge's M&R, (Doc. No. 34), is AFFIRMED and ADOPTED AS AMENDED HEREIN; Defendant's Objections to the M&R, (Doc. No. 28), are SUSTAINED IN PART AND OVERRULED IN PART, and Defendant's Motion to Suppress, (Doc. No. 29), is DENIED.

**IT IS SO ORDERED.**

Signed: September 14, 2023

_____
Frank D. Whitney
United States District Judge